# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION

| | |
|---|---|
| **James and Tamera Allman, et al., individually, and on behalf of all others similarly situated,** | **CASE NO.:** |
| **Plaintiffs,** | |
| **v.** | **CLASS ACTION COMPLAINT** |
| **Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Tai'an Taishan Plasterboard Co., Ltd.; Beijing New Building Materials Public Limited Co.; Beijing New Building Materials (Group) Co., Ltd.; China National Building Material Co., Ltd.** | **JURY TRIAL DEMAND** |
| **Defendants.** | |

_____/

## PLAINTIFFS' OMNIBUS CLASS ACTION COMPLAINT (XXXIV)

Pursuant to Fed. R. Civ. P. 23, the class representatives in this action bring suit on behalf of themselves and all other similarly situated owners and residents of real property containing defective Chinese manufactured drywall that was designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, or sold by the Defendants.

Each of the class representatives is pursuing a nationwide class action against the Defendants with respect to the drywall located in plaintiffs' homes.   Each of the Defendants in this action, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Taian Taishan Plasterboard Co., Ltd. ("TTP"); Beijing New Building Materials Public Limited Co. ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China

1

National Building Material Co., Ltd. ("CNBM"), are liable for damages incurred by Plaintiffs due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue in this litigation.

## JURISDICTION, PARTIES, AND VENUE

1.     Original jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA").   *See* 28 U.S.C. § 1711, *et. seq.*   The Plaintiffs and certain of the Defendants in these actions are citizens of different states and the amounts in controversy in these actions exceed five million dollars ($5,000,000.00), exclusive of interest and costs.

2.     Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) and (c) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to these claims occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.     For purposes of clarity, the Plaintiffs are asserting claims on behalf of all owners and residents of the subject properties, including but not limited to, minors and other residents of the properties who do not appear herein as named plaintiffs.

4.     Plaintiffs, James and Tamera Allman are citizens of North Carolina and together own real property located at 103 Gregg Court, Lot 2 Pozier Acres, Moyock, NC 27958. Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

5.      Plaintiffs, John and Joan Fiala are citizens of Pennsylvania and together own real property located at 101 Potecasi Creek Court, Hertford, NC 27944.   Plaintiffs have incurred damages caused by the drywall distributed by Defendants and are participating as class representatives for similarly situated individuals.

6.      Plaintiff, Brian Groves is a citizen of North Carolina and owns real property located at 5670 Gooseneck Road, Riegelwood, NC 28456.   Plaintiff has incurred damages caused by the drywall distributed by Defendants and is participating as a class representative for similarly situated individuals.

## DEFENDANTS

7.      Unless specifically stated to the contrary, all individual defendants are citizens of the state where they do business and all entities are citizens of the state where they are organized. For those entities, where the state of organization is not listed, it is asserted upon information and belief that the entity is incorporated and/or organized in the state of its principal place of business.

8.      Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information

3

and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9.      Defendant TTP is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.   Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

10.      Defendant TTP is a wholly owned subsidiary of Defendant Taishan.

11.      During the period when Taishan and its subsidiaries were distributing defective drywall to the United States, these entities consistently misrepresented the drywall they were exporting complied with ISO and ASTM quality standards. For instance, Taishan's website boasted that it was exporting large quantities of drywall to the United States and that its drywall complied with ISO quality standards.   The employees of Taishan and its subsidiaries also sent

4

emails to potential customers boasting about their experience exporting large quantities of drywall to the United States.   These employees also provided false assurances that the drywall they were exporting complied with ASTM quality standards.

12.    Defendant BNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant manufactured and sold, directly and indirectly, to certain suppliers in the United States.

13.    On April 21, 2017, Judge Fallon in MDL 2047 issued an Order and Reasons on Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b) (hereafter "Rule 12(b) Order"). *See* Rec.Doc.No. 20739.   The Rule 12(b) Order correctly determined that:

    *    BNBM is the controlling shareholder of Taishan and that Taishan is an agent of
         BNBM.

    *    BNBM is controlled by China National Building Materials Group Co. ("CNBM

Group").[1]

* BNBM has exercised a high degree of control over Taishan's operational

  management and its day to day operations.

* BNBM has had voting control over Taishan's board since 2005.

* BNBM controls Taishan's board and management team.

* BNBM audits Taishan and requires that Taishan submit weekly reports.

* BNBM must approve certain activities by Taishan including the building of

  factories and all matters concerning drywall production.

* BNBM controls Taishan's financial and strategic business decisions.

* Taishan must provide BNBM with a stake in all of its subsidiaries.

* BNBM and Taishan share officers, directors, and executives.

* Taishan and BNBM also share certain property.

* BNBM provides Taishan with loan guarantees.

14.     On October 13, 2015, CNBM publicly announced that BNBM will acquire 100%

of Taishan's shares.    BNBM subsequently acquired 100% of Taishan's shares on October 27,

2016.

15.     BMBM consistently exerted control over Taishan and its subsidiaries when these

entities were exporting defective drywall to the United States.    For instance, one of BNBM's

board members, Tongchun Jia, is the chairman of the board of directors and general manager of

---

[1] CNBM Group is not being pursued as a defendant in the instant complaint as CNBM Group has been dismissed as a defendant by Judge Fallon. The order of dismissal is interlocutory and is subject to appeal at a later date.

Taishan.   Mr. Tongchun Jia occupies similar positions with most of Taishan's subsidiaries. Through Mr. Tongchun Jia's position with Taishan and its subsidiaries, BNBM controls the actions and operations of these entities.   Even where Tongchun Jia does not formally hold a position with a Taishan subsidiary, BNBM is able to exert its control over the subsidiary through Mr. Tongchun Jia's influence.   For instance, the chairman of the board of TTP, Peng Shi Liang, was also an employee of Taishan.   BNBM was thus able to control TTP since the chairman of its board reported directly to Tongchun Jia.   Accordingly, since BNBM had direct control over Taishan and its subsidiaries, it should be held responsible for their sale of defective drywall.

16.     Defendant, BNBM Group is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, have continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

17.    Defendant, CNBM is a foreign corporation doing business in several States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, Defendant together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Defendant, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.    The Rule 12(b) Order correctly determined that CNBM is the controlling shareholder of BNBM.

19.    To the extent any of the foreign defendants are deemed to be foreign sovereign entities, including but not limited to Taishan, TTP, BNBM, BNBM Group, and CNBM, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.   Plaintiffs allege that the claims against the foreign defendants are based upon commercial activities carried on in the United States.   The claims also seeks monetary damages against a foreign state for damage to property occurring in the

United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

## FACTS REGARDING THE DEFENDANTS

20.     Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Alabama, California, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, and Virginia.   Upon information and belief, CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. CNBM Group, together with its affiliates, subsidiaries and/or actual or apparent agents, manufactured and sold, directly and indirectly, to certain suppliers in the United States.

21.     The Rule 12(b) Order correctly determined that:

*       CNBM Group is the controlling shareholder of CNBM and BNBM Group.

*       CNBM Group is the controlling shareholder of BNBM and Taishan by virtue of its control over CNBM and BNBM Group.

*       All the Defendants operate as a single-business enterprise that is led by CNBM Group.

22.     CNBM Group has exerted high levels of control over its subsidiary entities, including but not limited to CNBM, BNBM, BNBM Group, Taishan, and TTP, by virtue of its

scheme of appointing overlapping officers and directors of subsidiary entities, its use of notices

and management reports sent to subsidiaries, its requirement that its direct subsidiaries manage

investments in subsidiaries pursuant to CNBM Group directives, the implementing of policies

for conducting audits, and its requirement that subsidiaries submit various reports.   Many

CNBM Group officers and directors hold positions with BNBM and Taishan.   The Company

culture of CNBM Group establishes a "Parent-subsidiary" company that is managed and directed

strictly from the top down.   For instance, one of CNBM Group's indirect subsidiary entities,

BNBM, owns the majority of Taishan's shares and has the ability to appoint the majority of

Taishan's board of directors.   CNBM Group controls BNBM by virtue of another CNBM Group

subsidiary, CNBM, which is the parent entity of BNBM.   CNBM Group has exerted day-to-day

control over each of its subsidiary entities and has used its influence to direct specific activities

and to appoint officers and directors that are beholden to CNBM Group.   Upon information and

belief, this influence was exerted with respect to permitting Taishan and BNBM to market,

export, and distribute drywall to the United States and the decision for Taishan to not appear at

Judgment Debtor proceedings before Judge Fallon in New Orleans.

23.   For instance, at the outset of the MDL 2047, CNBM Group in conjunction with its

controlled subsidiaries, Taishan and BNBM, discussed and then implemented a deliberate

strategy whereby Defendants would not respond to the litigation and would allow default

judgments to be entered against them.   Defendants have also shared lawyers and law firms.

When Taishan finally responded to this litigation, it did so for the limited purpose of contesting

personal jurisdiction.   When Taishan was unsuccessful in obtaining dismissal on these grounds

and lost its appeal to the Fifth Circuit Court of Appeals, it withdrew from the litigation with the

approval of its parent entities and was subsequently held in civil and criminal contempt on July 17, 2014.  Following the issuance of this contempt order, CNBM Group directed its subsidiaries to cease depositing funds in New York banks.

## FACTS REGARDING DEFECTIVE DRYWALL

24.     Defendants' drywall is predominately composed of gypsum.

25.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants herein), sulfur compounds exit the drywall.

26.     The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as the blackening and break down of air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).   These compounds are not only harmful to personal property but they are also smelly and irritating to humans and pets.

27.     Although the drywall functions according to its intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

28.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures and personal property have been exposed to Defendants' defective drywall and the harmful effects of the sulfur compounds that exit from Defendants' defective drywall.

29.   Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall, which was unfit for its intended purpose in that the drywall caused rapid sulfidation and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures.

30.   Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

31.   Defendants recklessly, wantonly and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

32.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm.

33.   As a direct and proximate result of Defendants' defective and unfit drywall and the harmful effects of the sulfur compounds that exit these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.   These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes, residences or structures and property as a direct result of damage caused to the property and indirect damage resulting from perceived defects to the property, including stigma damages and loss of use and enjoyment of their home and property.

34.   As a direct and proximate result of Defendants' defective drywall and the harmful

effects of the sulfur compounds that exit these products, Plaintiffs and the Class Members have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of emergency/corrective notice.

## CLASS ACTION ALLEGATIONS

35.    The representative Plaintiffs with claims against the Defendants assert a class pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and those similarly situated, against the Defendants. Plaintiffs define their class as follows:

> All owners and residents (past or present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants.

### General Class Allegations and Exclusions from the Class Definitions

36.    The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

37.    Upon information and belief, the defective and unreasonably dangerous drywall in Plaintiffs' homes or other structures was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs and Class Members.   Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

38.    There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.   Among these common questions of law and fact are the following:

a.    whether Defendants' drywall products are defective and/or unfit for their intended purpose;

b.    whether Defendants tortiuously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall products;

c.    whether Plaintiffs are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.    whether Plaintiffs are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

39.    The legal claims of named Plaintiffs are typical of the legal claims of other Class Members.    Named Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

40.    Named Plaintiffs are adequate representatives of the Class, together with their legal counsel, each will fairly and adequately protect the interests of Class Members.    Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

41.    The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and complex litigation involving harmful products.    Counsel will fairly and adequately protect the interests of the Class.

42.    The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or adjudications with respect to individual Class members that, as a

14

practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

43.   The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).   Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

44.   A class action is superior in this case to other methods of dispute resolution.   The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class Members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits. Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

45.   The issues particularly common to the Class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
### NEGLIGENCE
### (Against All Defendants)

46.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

47.   Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g)

supplying, h) inspecting, i) installing, j) marketing, and/or k) selling this drywall, including a duty to adequately warn of their failure to do the same.

48.  Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

49.  Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

50.  Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

51.  Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

52.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

53.  As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

54.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.   Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, I) marketing, and/or j) selling this drywall.

56.   Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

57.   Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.   For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s).

58.   Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

59.   Given the defective nature of Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, and damages to Plaintiffs and Class Members.

60.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and

17

Class Members were harmed and have incurred damages as described herein.

## COUNT III
## STRICT LIABILITY
### (Against All Defendants)

61.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

62.     At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

63.     The drywall, including that installed in the homes of Class Members was placed by Defendants in the stream of commerce.

64.     Defendants knew that the subject drywall would be used without inspection by consumers.

65.     Defendants intended that the drywall reach the ultimate consumers, such as Class Members, and it indeed reached Class Members when it was installed in their homes.

66.     When installed in Class Members' homes, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

67.     At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

68.     The subject drywall was not misused or altered by any third parties.

69.     The Defendants' drywall was improperly manufactured, designed, inspected, tested, marketed, distributed, and sold.

70.     The design impropriety was in designing drywall that allows high levels of sulfur compounds to exit the drywall.

71.     The manufacturing impropriety was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur compounds that were too high and allow high levels of sulfur compounds to exit the drywall.

72.     The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a unacceptable condition, as described above.

73.     The Defendants' negligence in manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use and to Class Members.

74.     The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design, inspection, testing, manufacturing, marketing, and selling of the drywall.

75.     Class Members were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Class Members, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

76.     Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Class Members.

77.     Defendants' defective drywall benefit to Class Members, if any, was greatly outweighed by the risk of harm and danger to them.

78.     The harmful and dangerous propensities of the drywall, as well as Defendants' failure to adequately warn Class Members of these propensities rendered the drywall

unreasonably dangerous and was the direct and proximate cause of damages to Class Members.

## COUNT IV
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against All Defendants)

79.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80.    Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

81.    At the times Defendants utilized, supplied, inspected, and/or sold their drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

82.    Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

83.    Although the drywall functions according to its intended purpose as a building component, it is unfit, defective as alleged in Paragraph 27 and not merchantable for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

84.    The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the problems set forth herein.

85.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

86.     As a direct and proximate result of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages as described herein.

<u>COUNT V</u>
**REDHIBITION**
**(By Louisiana Class Members Against All Defendants)**

87.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.     The drywall manufactured, distributed and/or sold by Defendants was not reasonably fit for its ordinary and intended purpose as alleged in Paragraph 27 above.

89.     Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises, in accordance with La. Civ. Code art. 2524.

90.     In addition, or in the alternative, the drywall manufactured, distributed and/or sold by Defendants contained redhibitory defects, in that, at the time of delivery, the propensity to allow sulfur compounds to exit the drywall renders the drywall so useless and/or inconvenient that it must be presumed that Plaintiffs would not have purchased the drywall had they known of the redhibitory defect or defects.

91.     In the alternative, the defects are redhibitory defects in that, while not rendering the drywall totally useless, diminish the drywall's use and/or value to such an extent that it must be presumed that the buyer would have bought it, but for a lesser price.

92.     The Defendants are conclusively presumed to know of the defects in the drywall.

93.     In addition, it is believed and alleged that All Defendants knew of the defects in the drywall at the time the drywall was delivered and/or sold.

94.     Defendants have had numerous opportunities to repair and/or replace the drywall and associated fixtures and/or building components and have failed to do so; in addition, and/or in the alternative, such requests have been, would have been and/or would be futile; Defendants, in addition, or alternatively, had actual knowledge of the problems in the drywall and the need for replacement, remediation and/or repair.

95.     Defendants are therefore liable to all Louisiana Plaintiffs for a return of the purchase price, (with interest from the time it was paid), reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the drywall and associated items, for damages, and for reasonable attorneys' fees, in accordance with La. Civ. Code art. 2545.

## COUNT VI
## LOUISIANA PRODUCTS LIABILITY ACT
### (By Louisiana Class Members Against All Defendants)

96.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

97.     In addition to any and all damages, attorneys fees and other remedies made available to Louisiana Plaintiffs under the warranty of fitness and/or warranty against redhibitory defects, the Defendants are liable to Louisiana Plaintiffs under the Louisiana Products Liability Act, ("LPLA"), La. R.S. 9:2800.51, *et seq.*

98.     Defendants, upon information and belief, expressly warranted that "the gypsumboards manufactured and sold ... are guaranteed to be free from defects in materials and workmanship."

99.     The Defendants expressly warranted that "the gypsumboards were manufactured in accordance to ASTM C36."

22

100.    The drywall at issue is, in all cases, unreasonably dangerous by virtue of the unreasonable emission of sulfur compounds which do not in any way contribute to or enhance the utility of the drywall, yet pose a risk to the wiring, plumbing, appliances, personal property, overall economic value of the property and financial security of the owner, and/or the health of the residents of the property.

101.    At all times pertinent and material hereto, there existed alternative feasible manufacturing processes and/or designs of drywall which perform all of the functions and utility of traditional drywall, without allowing unreasonable levels of sulfur compounds to exit the drywall.

102.    At all times pertinent and material hereto, Defendants knew that their drywall was unreasonably dangerous and/or defective as set forth herein.

103.    In the alternative, Defendants should have, at all times pertinent and material hereto, known of the unreasonably dangerous and/or defective characteristics and/or conditions, had they reasonably employed then-existing scientific and/or technical knowledge, reasonable testing, and/or other reasonable and then-accepted methods of quality assurance and/or quality control.

104.    Defendants' drywall is unreasonably dangerous in composition or construction in that, at the time it left Defendant's control, it deviated in a material way from Defendant's own specifications or performance standards.

105.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in design, in that, at the time the drywall left Defendant's control, there existed an alternative design for the product that was capable of preventing Plaintiffs' damage, and the likelihood of

causing the plaintiffs' damage and the gravity of that harm outweighed the burden (if any) on the Defendant in adopting such alternative design and the adverse effect (if any) on the utility of the drywall.

106.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous in that it fails to conform to an express warranty about the product which induced the use of the product and caused damage to Plaintiffs to the extent that the warranty was untrue.

107.    In addition, and in the alternative, Defendants' drywall is unreasonably dangerous due to an inadequate warning, in that, at the time the drywall left Defendant's control, the drywall possessed a characteristic that might cause damage and yet Defendant failed to use reasonable care to provide an adequate warning of such characteristics and/or dangers to users and/or handlers of the drywall.

108.    Defendants are therefore liable to Louisiana Plaintiffs for all damages reasonable in the premises.

## COUNT VII
## PRIVATE NUISANCE
### (All Defendants)

109.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

110.    The Defendants' tortious or wrongful acts or omissions have caused sulfur compounds and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

111.   Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

112.   Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

113.   The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

114.   Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, harm, and loss, which they suffered and will continue to suffer.

115.   As a direct and proximate result of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

116.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

117.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

118.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

25

119.   Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT IX
## VIOLATION OF CONSUMER PROTECTION ACTS
### (Against All Defendants)

120.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

121.   This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act); GA ST § 10-1-393, *et seq.* (Georgia Consumer Protection Act);   SC ST § 39-5-20, *et seq.* (South Carolina Consumer Protection Act); Tenn. Code Ann. § 47-18-104, et seq. (Tennessee Consumer Protection Act).

122.   The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Consumer Protection Acts of the Relevant States.

123.   Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

124.   As a direct and proximate result of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

### COUNT X
### EQUITABLE AND INJUNCTIVE RELIEF
### (Against All Defendants)

125.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

126.   Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

127.   Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

128.   Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) remediate, repair and/or replace the drywall in Class Members' homes or other structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that the drywall is not defective and/or unreasonably dangerous as alleged herein; and (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the harm and dangers associated with the drywall.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

a.    an order certifying the case as a class action;

b.    an order certifying the Class;

c.    an order appointing Plaintiffs as the Class Representatives of the Class;

d.    an order appointing undersigned counsel and their firms as counsel for the Class;

e.    compensatory and statutory damages;

f.    punitive damages as allowed by law;

g.    pre and post-judgment interest as allowed by law;

h.    injunctive relief;

I.    an award of attorneys' fees as allowed by law;

j.    an award of taxable costs; and

k.    any and all such further relief as this Court deems just and proper.

Respectfully submitted,

Dated:   November 1, 2017

By:      /s/ J. Michael Malone
         J. Michael Malone, Esquire
         North Carolina Bar ID#26512
         Hendren, Redwine & Malone, PLLC
         4600 Marriott Drive, Suite 150
         Raleigh, NC   27612
         Phone: (919) 420-7867
         Fax: (919) 420-0475
         mmalone@hendrenmalone.com

         Attorneys for Plaintiffs

**COURT APPOINTED PLAINTIFFS' LIASON AND LEAD COUNSEL IN MDL 2047**

Russ M. Herman                        Arnold Levin
HERMAN, HERMAN & KATZ, LLC            Levin Sedran & Berman
820 O'Keefe Avenue                    510 Walnut Street, Suite 500
New Orleans, Louisiana 70113          Philadelphia, PA 19106
Phone: (504) 581-4892                 Phone: (215) 592-1500
Fax: (504) 561-6024                   Fax: (215) 592-4663
rherman@hhklawfirm.com                alevin@lfsblaw.com

*Plaintiffs' Liaison Counsel MDL 2047*    *Plaintiffs' Lead Counsel MDL 2047*

**COURT APPOINTED PLAINTIFFS' STEERING
COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Dawn M. Barrios                       Robert Becnel
Barrios, Kingsdorf & Casteix, LLP     Becnel Law Firm, LLC
701 Poydras Street, Suite 3650        425 W. Airline Highway, Suite B
New Orleans, LA 70139                 Laplace, LA 70068
Phone: (504) 524-3300                 Phone: (985) 536-1186
Fax: (504) 524-3313                   Fax: (985) 536-6445
Barrios@bkc-law.com                   rbecnel@becnellaw.com

29

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Patrick Montoya
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
patrick@colson.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Bruce William Steckler
Steckler Gresham Cochran
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO COURT APPOINTED PLAINTIFFS' STEERING COMMITTEE IN MDL 2047 - OF COUNSEL TO PLAINTIFFS**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W, Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**COUNSEL FOR INDIVIDUAL PLAINTIFFS**

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com